**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES LIABILITY INSURANCE COMPANY,<br><br>Plaintiff and Counter-Defendant,<br><br>v.<br><br>DANIEL McLAUGHLIN,<br><br>Defendant and Counter-Claimant. | ) | No. 26 C 719<br><br>Judge Sara L. Ellis |

**OPINION AND ORDER**

Plaintiff United States Liability Insurance Company ("USLI") sued Defendant Daniel McLaughlin for declaratory judgment to determine whether USLI has any obligation to indemnify or defend McLaughlin in an underlying lawsuit filed against McLaughlin.[1] The parties dispute whether a previously executed settlement agreement forecloses McLaughlin's ability to seek indemnification and defense from USLI, and separately whether the nature of the underlying lawsuit triggers USLI's indemnity and defense obligations as defined in the parties' insurance policy. USLI and McLaughlin have now both moved for summary judgment, arguing for their preferred interpretation of the relevant settlement agreement and insurance policy. Because a genuine conflict exists within the settlement agreement's release language, the Court denies both parties' motions on this issue and allows it to proceed before a trier of fact. But if a trier of fact determines McLaughlin did not release his claim, then the undisputed facts demonstrate that the Policy covers McLaughlin's claim and that he provided adequate notice.

[1] USLI initially also included Affinity Strategies, LLC as a defendant, but later voluntarily dismissed the company pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i). Doc. 34.

Finally, the Court denies McLaughlin's request for judgment on his Section 155 claim because a bona fide dispute exists.

## BACKGROUND[2]

### I. Underlying Lawsuits

The American College of Medical Quality, Inc. ("ACMQ") hired Affinity Strategies, LLC ("Affinity") to provide association management services and perform duties by the staff of an association as directed by or on behalf of ACMQ's Board of Trustees. Doc. 1-1 at 4. In February 2022, ACMQ needed an executive director, whose job responsibilities included promoting and driving attendance for ACMQ's 2022 annual conference. Affinity assisted ACMQ in its search, identifying candidates for the executive director position, including McLaughlin. On February 10, 2022, Affinity and McLaughlin entered into an independent contractor agreement in which McLaughlin agreed to perform "specific targeted recruiting and/or administrative services (the 'Services') for an identified client ('Client') of Affinity Strategies" in exchange for $5,000 per month. *Id.* at 5–6. Affinity's "Client" was ACMQ and although Affinity paid McLaughlin his monthly payments, the money came from ACMQ. Affinity and McLaughlin's agreement includes an indemnification provision, which states that McLaughlin:

> shall be solely liable for and expressly agrees to indemnify, defend and hold harmless Affinity Strategies, its agents, officers, members, managers, and employees from any and all liability, claims demands, actions, causes of action, loss, damage, costs, expense including attorneys' fees, with respect to any liability arising out of [McLaughlin]'s negligent or wrongful acts omissions, or failure to comply with the requirements of this Agreement, or Affinity Strategies' or any other party's reliance upon any information or deliverable provided by [McLaughlin] in connection with, arising out of, or relating to the performance of

[2] The Court derives the facts in this section from the Joint Statement of Undisputed Material Facts. Docs. 24, 29. The Court takes all facts in the light most favorable to the non-movant for each respective motion.

> the Services, including any claim for personal injury suffered by an employee or agent of [McLaughlin]. McLaughlin agrees to defend, using counsel reasonably acceptable to Affinity Strategies, any action or proceeding brought against Affinity Strategies by reason of any such causes.

*Id.* at 6.

On August 10, 2022, Loop Spine & Sports Center, Ltd. ("Loop Spine") filed a class action lawsuit (the "Loop Spine TCPA Lawsuit") against ACMQ and ten John Does for allegedly sending or causing to send unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and Illinois law. *See Loop Spine & Sports Ctr., Ltd. v. Am. Coll. of Med. Quality, Inc.*, No. 22 C 4198, Doc. 1 (N.D. Ill.). On July 27, 2023, Loop Spine amended its complaint to add McLaughlin and Affinity as defendants. *Id.*, Doc. 63.

Almost one year later, on July 2, 2024, McLaughlin filed a lawsuit against USLI, seeking a declaration that USLI must defend McLaughlin in the Loop Spine TCPA Lawsuit (the "Coverage Lawsuit"). *See McLaughlin v. U.S. Liab. Ins. Co.*, No. 24 C 5591, Doc. 1 (N.D. Ill.). In his complaint, McLaughlin defined the "underlying lawsuit" as the Loop Spine TCPA Lawsuit. *Id.* ¶ 6. On November 4, 2025, McLaughlin filed a notice of voluntary dismissal pursuant to a confidential settlement agreement. *Id.*, Doc. 37.

The parties formally executed a confidential settlement agreement (the "Settlement Agreement") of the Coverage Lawsuit on November 10, 2025. Doc. 16. McLaughlin and USLI "disagree[d] with respect to whether and to what extent the costs and fees incurred by MCLAUGHLIN in defending against the Underlying Lawsuit are reasonable and necessary," *id.* ¶ E, but they nonetheless "desire[d] to settle any and all claims, obligations and duties they might

owe to each other arising out of MCLAUGHLIN's claim for a defense to the Underlying Lawsuit and the Coverage Action," *id.* ¶ F. Accordingly, McLaughlin agreed to release:

> USLI and its respective agents, employers, employees, associates, of counsel, independent contractors, officers, directors, shareholders, corporations (including, but not limited to, professional corporations), parent and subsidiary corporations, trustors, trustees, partners, joint venturers, heirs, estates, beneficiaries, representatives, executors, administrators, attorneys, from any and all claims, contentions, rights, debts, liabilities, demands, obligations, duties, promises, costs, expenses, liens, subrogation rights, indemnification rights, damages, losses, actions, bad faith claims, and causes of action, of any kind whatsoever arising out of the request for defense to the Underlying Actions and/or Coverage Action (hereinafter referred to as "Claims"), whether due or owing in the past, present or future and whether based upon contract, tort, statute or any other legal or equitable theory or recovery, and whether known or unknown, suspected or unsuspected, fixed or contingent, matured or unmatured, with respect to, pertaining to, or arising from any matters, acts, omissions, events, conduct or occurrences at any time prior to the date of this Agreement, including, without limiting the generality of the foregoing provisions, any and all causes of action or Claims based on the facts alleged in the Underlying Actions and Coverage Action.

*Id.* ¶ 4. Although the release section includes a definition of "Claims," the Settlement Agreement's defined terms section defines "Claims" as:

> [A]ny past, present or future claim, demand, suit, action or liability regardless of cause whatsoever, whether at law or in equity, known or unknown, anticipated or unanticipated, foreseen or unforeseen, direct or indirect, fixed or contingent, accrued or unaccrued, which has been or may be asserted by or on behalf of any Person, including without limitation any crossclaim, counterclaim, third-party claim, right, request, suit, lawsuit, administrative proceeding, notice, count, judgment, execution, attachment, debt, lawsuit, damages, costs, arbitration, cause of action or order arising from or in any way connected with McLAUGHLIN's claim for a defense to the Underlying Lawsuit. This definition includes any demand for punitive damages or exemplary damages, "bad faith", ILCS 5/155 or its equivalent, and/or prejudgment or post-judgment interest. This definition does not include any claim for indemnification arising from the Underlying Lawsuit.

*Id.* ¶ 1(e). The Settlement Agreement defines the "Underlying Lawsuit" as the Loop Spine TCPA Lawsuit. *Id.* ¶ B.

On December 7, 2023, Affinity made a written demand on McLaughlin to honor his obligations of indemnity under Affinity and McLaughlin's agreement with respect to the Loop Spine TCPA Lawsuit. Doc. 1-1 at 49. Then, on November 12, 2025, Affinity filed a lawsuit (the "Affinity Lawsuit") against McLaughlin asserting two causes of action: (1) contractual indemnity and (2) reimbursement of defense costs. *See* Doc. 17-1. Affinity alleges that its lawsuit arises from McLaughlin's obligations "to indemnify, defend, and hold harmless Affinity for its costs and expenses incurred (including attorneys' fees) in a lawsuit filed in the United States District Court for the Northern District of Illinois on August 10, 2022, entitled *Loop Spine & Sports Center, Ltd. v. American College of Medical Quality, Inc., et al.*, Case No. 22-cv-04198." *Id.* ¶ 1.

A process server served McLaughlin with the Affinity Lawsuit on November 18, 2025. Three days later, on November 21, 2025, McLaughlin notified USLI of the Affinity Lawsuit and demanded a formal tender of defense and indemnity under Policy Number NDO1034765R (the "Policy"). On December 19, 2025, USLI denied McLaughlin's request and explained that the Settlement Agreement barred his request and, even assuming *arguendo* that the Settlement Agreement did not act as a full bar, the Policy itself precludes coverage for the Affinity Lawsuit's claim. Doc. 29-3.

## II. USLI Policy

The Policy, which USLI issued to ACMQ on July 7, 2022 and which was effective from July 8, 2022 to July 8, 2023, is a "Non-Profit Directors and Officers" liability insurance policy. Doc. 1-2 at 2. The Policy defines an "Individual Insured" as "any past, present, or future . . .

Executive." *Id.* at 8. The Policy defines a "Claim" as any "written demand for monetary damages or non-monetary relief, including injunctive relief; [or] civil proceeding commenced by service of a complaint or similar pleading . . . received by, or brought or initiated against any Insured alleged a Wrongful Act, including any appeal therefrom." *Id.* at 7. A "Wrongful Act" means any:

> actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties . . . committed or allegedly committed by . . . any Individual Insured, arising solely from duties conducted on behalf of the Organization or asserted against an Individual Insured because of [an actual or alleged act, error, omission, misstatement, misleading statement, neglect, or breach of duties].

*Id.* at 11–12.

The Policy states that USLI "will pay, on behalf of an Individual Insured, Loss and Defense Costs resulting from a Claim." *Id.* at 6. But "[a]s a condition precedent to exercising any right to coverage under this Policy, the Insured shall give to [USLI] written notice of a Claim as soon as practicable after any . . . Executive Director . . . becomes aware of such Claim." *Id.* at 37. The Policy also asserts that USLI:

> shall have the right and duty to defend any Claim covered by this Policy even if the allegations are groundless, false or fraudulent [and USLI]'s obligation to defend any Claim or pay any Loss or Defense Costs shall be completely fulfilled and extinguished if the applicable Limit of Liability has been exhausted by payment of Loss.

*Id.* at 34–35. The Policy has a $1,000,000 aggregate coverage limit of liability, which has not been reached.

## III. Procedural History

On January 22, 2026, USLI filed this lawsuit for declaratory judgment against McLaughlin, contending that USLI has no obligation to defend or indemnify McLaughlin in the

Affinity Lawsuit because (1) McLaughlin released any claims when he signed the Settlement Agreement, (2) McLaughlin only provided USLI notice of Affinity's claim two years after Affinity notified McLaughlin of the claim, in breach of the Policy's requirement that McLaughlin provide USLI notice as soon as practicable, and (3) Affinity seeks relief based on its alleged contract with McLaughlin, not a "Wrongful Act." Doc. 1 ¶¶ 22–36. McLaughlin brought a counterclaim against USLI for vexatious conduct in violation of Section 155. Both parties filed the cross motions for summary judgment.

## LEGAL STANDARD

Summary judgment obviates the need for a trial where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To determine whether a genuine dispute of material fact exists, the Court must pierce the pleadings and assess the proof as presented in depositions, documents, answers to interrogatories, admissions, stipulations, and affidavits or declarations that are part of the record. Fed. R. Civ. P. 56(c)(1); *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999 (7th Cir. 1992). The party seeking summary judgment bears the initial burden of demonstrating that no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bunn v. Fed. Deposit Ins. Corp. for Valley Bank Ill.*, 908 F.3d 290, 295 (7th Cir. 2018). In response, the non-moving party cannot rest on mere pleadings alone but must use the evidentiary tools listed above to identify specific material facts that demonstrate a genuine dispute for trial. Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324; *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 627 (7th Cir. 2014). The Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wehrle v. Cincinnati Ins. Co.*, 719 F.3d 840, 842 (7th Cir. 2013). However, a bare contention by the non-moving party that an issue

of fact exists does not create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), and the non-moving party is "only entitled to the benefit of inferences supported by admissible evidence, not those 'supported by only speculation or conjecture,'" *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The same standard applies when considering cross-motions for summary judgment. *Int'l Bhd. of Elec. Workers, Local 176 v. Balmoral Racing Club, Inc.*, 293 F.3d 402, 404 (7th Cir. 2002). Therefore, when considering USLI's motion for summary judgment, the Court views all evidence in the light most favorable to McLaughlin, and when considering McLaughlin's motion for summary judgment, the Court views all evidence in the light most favorable to USLI. *Id.*

## ANALYSIS

### I. The Settlement Agreement

The parties first dispute whether McLaughlin released his ability to demand that USLI defend or indemnify him in the Affinity Lawsuit by signing the Settlement Agreement. USLI argues that the Settlement Agreement's release clause includes the Affinity Lawsuit because McLaughlin agreed to release "any and all causes of actions or Claims based on the facts alleged in the Underlying Actions [Loop Spine TCPA Lawsuit] and Coverage Action," Doc. 16 ¶ 4, and the Affinity Lawsuit arises from "the obligations of McLaughlin to indemnify, defend, and hold harmless Affinity for its costs and expenses incurred" in the Loop Spine TCPA Lawsuit, Doc. 29 ¶ 11. McLaughlin claims that the Court should not read the release clause so broadly because the Settlement Agreement memorialized the parties' intent to release *only* McLaughlin's claim "for a defense to the Underlying Lawsuit," Doc. 29 ¶ 7, which the parties explicitly define as the Loop Spine TCPA Lawsuit. McLaughlin notes that the Settlement Agreement's definition of "Claims" excludes "any claim for indemnification arising from the Underlying Lawsuit," *id.*, further

emphasizing that he did not relinquish his right to demand that USLI defend and indemnify him in the Affinity Lawsuit.

The release at issue is governed by contract law and construed against the benefiting party. *Janowiak v. Tiesi*, 402 Ill. App. 3d 997, 1014 (2010). "General words of release are restrained in effect by the specific recitals contained in the document," with the parties' intentions controlling the release's scope and effect. *Id.* The Court looks to the contract as a whole to determine the parties' intentions, only considering extrinsic evidence if an ambiguity exists. *Farm Credit Bank of St. Louis v. Whitlock*, 144 Ill. 2d 440, 447 (1991). A contract is ambiguous if it is "reasonably or fairly susceptible to having more than one meaning." *Bourke v. Dun & Bradstreet Corp.*, 159 F.3d 1032, 1036 (7th Cir. 1998).

Here, McLaughlin agreed to specifically release:

> any and all claims, . . . duties, [and] . . . indemnification rights . . . of any kind whatsoever arising out of the request for defense to the Underlying Action and/or Coverage Action (hereinafter referred to as "Claims") . . . including, without limiting the generality of the foregoing provisions, any and all causes of action or Claims based on the facts alleged in the Underlying Actions.

Doc. 16 ¶ 4. The first clause of the release limits the scope of the release to only those claims, duties, and indemnity rights *arising out of the request for defense* to the Loop Spine TCPA Lawsuit, but the second clause alters the release to any and all causes of action or Claims *based on the facts alleged* in the Loop Spine TCPA Lawsuit. This distinction makes a difference. While the Affinity Lawsuit is based on the facts alleged in the Loop Spine TCPA Lawsuit, it does not arise out of McLaughlin's request for defense to the Loop Spine TCPA Lawsuit; rather, it arises from the interplay between McLaughlin's separate contract with Affinity and Affinity's role as a defendant in the Loop Spine TCPA Lawsuit. Further creating confusion, the parties define "Claims" twice, and in two different ways: once in the "Definitions" section, Doc. 16

¶ 1(e), and once in the "Release of All Claims" section, *id.* ¶ 4. Relevant here, the "Definitions" section definition specifically excludes "any claim for indemnification arising from the [Loop Spine TCPA Lawsuit]." *Id.* ¶ 1(e).

Because of the conflicting release clauses and claims definitions, the Court finds the parties' release ambiguous. *Bank of Com. v. Hoffman*, 829 F.3d 542, 547 (7th Cir. 2016) ("The Illinois courts have repeatedly examined contracts with multiple release statements, where the 'general language is inconsistent and conflicts with the specific language.' . . . [T]hese contracts are deemed ambiguous." (quoting *Countryman v. Indus. Comm'n*, 292 Ill. App. 3d 738, 741 (1997))). "Where there is an ambiguity and if, after considering the contract language in light of parol evidence and rules of construction, doubt still remains as to the meaning of the contract, then the question of interpretation must be left to the trier of fact." *Countryman*, 292 Ill. App. 3d at 741. But because the parties argued that the Settlement Agreement is unambiguous—relating to their desired interpretation—neither provided any relevant extrinsic evidence. And so, the Court looks to Illinois rules of construction to see if it can resolve the Settlement Agreement's ambiguity.

Illinois courts prefer the reading of the contract that is "fair, customary, and such as prudent men would naturally execute," rather one that is "inequitable, unusual, or such as a reasonable man would not be likely to enter." *Trade Ctr., Inc. v. Dominick's Finer Foods, Inc.*, 304 Ill. App. 3d 931, 938 (1999) (quoting *Chi. Title & Tr. Co. v. Telco Cap. Corp.*, 292 Ill. App. 3d 553, 557 (1997)) (internal quotation marks omitted). "If a settlement agreement contains specific terms as well as general terms, the specific language controls." *Engineered Abrasives, Inc. v. Am. Mach. Prods. & Serv., Inc.*, 882 F.3d 650, 653 (7th Cir. 2018). But:

> [I]f the releasing party knew of other claims not mentioned in the release, a general release can't foreclose the unmentioned claims,

> but where both parties were aware of an additional claim at the time of signing the release, courts have given effect to the general release language of the agreement to release that claim as well.

*Id.* (citation omitted) (internal quotation marks omitted). Also, courts should give effect to every clause of a contract because courts presume that the parties inserted every clause for a purpose. *Countryman*, 292 Ill. App. 3d at 742.

Here, the Settlement Agreement's two release provisions do not neatly align with the traditional "general" and "specific" language that courts consider when applying this rule of construction. For example, in *Hoffman*, the parties' contract contained specific statements absolving the defendants from liability arising from specific documents or property. 829 F.3d at 547. But the contract also contained language generally releasing the defendant from all liabilities. *Id.* The Seventh Circuit concluded, applying Illinois law, that the specific language must control, meaning the plaintiff released the defendant from only all liabilities specifically related to a specific loan. *Id.* at 548. Comparatively, the parties here did not include a general "any and all liabilities" provision. They instead include two provisions that specifically absolve USLI from liability related to the Loop Spine TCPA Lawsuit, but one states that release includes any liability arising out of McLaughlin's request for defense in that lawsuit, whereas the other provision states that release includes any and all claims based on the facts alleged in the lawsuit. The rules of construction, therefore, do not favor summary judgment. *See Cathay Indus. USA, Inc. v. Bellah*, No. 16 C 2070, 2017 WL 4310623, at *5 (N.D. Ill. Sept. 28, 2017) (noting that the relevant release's general and specific provisions did not mirror the language analyzed in *Hoffman* and determining that the rules of construction disfavor summary judgment because a trier of fact could reasonably read the release provisions to encompass different scopes). And because this Court lacks any extrinsic evidence to determine the parties' intentions as to the

release's scope, the Court allows this issue to proceed before a trier of fact. *See id.* ("Because extrinsic evidence will be necessary for a trier of fact to determine the nature of the release as well as the parties' intentions as to its scope, summary judgment is inappropriate." (citing *Whitlock*, 144 Ill. 2d at 449 ("Caution must be exercised in granting summary judgment so as not to preempt the right of a party to present the factual basis of his case to the fact finder."))).[3]

## II. The Policy

Having found the scope of the parties' release undeterminable at this stage, the Court next turns to whether the Policy affords McLaughlin coverage for the Affinity Lawsuit and whether McLaughlin complied with the Policy's notice requirement.

### A. Wrongful Act

USLI argues that the Affinity Lawsuit seeks relief based on an alleged contract between McLaughlin and Affinity, not based on McLaughlin's duties on behalf of ACMQ, and therefore the Policy does not afford McLaughlin coverage because the Affinity Lawsuit does not allege a wrongful act. Instead, USLI states, the Affinity Lawsuit arises out of McLaughlin's independent contractor agreement with Affinity that the parties executed on February 10, 2022, in which McLaughlin agreed to indemnify and defend Affinity from all claims arising out of his negligent or wrongful acts relating to his job services. Doc. 17-1 ¶¶ 16, 23. McLaughlin responds that the Affinity Lawsuit alleges a wrongful act because the Affinity Lawsuit's complaint specifically states that Affinity invoked the indemnification provision in its independent contractor agreement with McLaughlin because of his actions promoting ACMQ's 2022 conference as

[3] The parties' two different definitions of "Claims" in the Settlement Agreement further support allowing this case to proceed before a trier of fact to determine the parties' intentions. One definition excludes indemnity claims arising from the Loop Spine TCPA Lawsuit, which arguably covers this case, whereas the second definition does not include this carve-out.

ACMQ's executive director, "including his actions on which the Loop Spine [TCPA] Lawsuit is based." *Id.* ¶ 36.

The Court concludes that no reasonable trier of fact could find for USLI on this issue. While USLI would have this Court stop its analysis at McLaughlin and Affinity's agreement, that suggestion disregards the fact that McLaughlin and Affinity entered into its independent contractor agreement to facilitate McLaughlin serving as ACMQ's executive director. *See id.* ¶ 17 ("The Affinity/McLaughlin Agreement defines the 'Contractor' thereunder as McLaughlin and provides, *inter alia*, that, '1.1 Subject to the terms and conditions of this Agreement, Contractor will perform specific targeted recruiting and/or administrative services (the "Services") for an identified client ("Client") [ACMQ] of Affinity Strategies.'"). Essentially, Affinity now seeks McLaughlin's indemnification and defense, and therefore McLaughlin seeks USLI's indemnification and defense, only because of McLaughlin's alleged wrongful actions—violating the TCPA—arising from his duties when serving as ACMQ's executive director. The Court, therefore, denies USLI summary judgment and grants McLaughlin summary judgment on this issue.

**B. Late Notice**

The Policy requires that McLaughlin notify USLI in writing as soon as practicable after becoming aware of a claim. USLI argues that McLaughlin failed to satisfy this requirement, which McLaughlin contests. To resolve this issue, the Court must determine the date on which McLaughlin became aware of Affinity's claim. USLI claims that McLaughlin became aware of the relevant claim on December 7, 2023, when Affinity made demand on him. McLaughlin argues that he was not aware of Affinity's claim until November 18, 2025, when a process service served him with the Affinity Lawsuit. Neither party disputes the relevant facts: (1) Loop

Spine filed the Loop Spine TCPA Lawsuit on August 10, 2022; (2) Affinity made demand on McLaughlin on December 7, 2023; (3) Affinity filed the Affinity Lawsuit against McLaughlin on November 12, 2025; (4) a process server served McLaughlin with the Affinity Lawsuit on November 18, 2025; (5) McLaughlin notified USLI of the Affinity Lawsuit and demanded a formal tender of defense and indemnity on November 21, 2025.

McLaughlin does not address USLI's argument that he became aware of Affinity's claim when Affinity made demand on McLaughlin on December 7, 2023. McLaughlin instead contends that he only became aware of Affinity's claim when he received the complaint in November 2025 and informed USLI three days later. But McLaughlin's argument neglects the Policy's definition of a claim, which includes any "written demand for monetary damages or non-monetary relief, including injunctive relief." Doc. 1-2 at 7. Affinity undisputedly provided written demand to McLaughlin on December 7, 2023. Doc. 17-1 at 49.

McLaughlin nonetheless argues that the Affinity Lawsuit and the Loop Spine TPCA Lawsuit are interrelated claims, which the Policy defines as "[m]ore than one Claim involving the same Wrongful Act or Interrelated Wrongful Acts." Doc. 1-2 at 38. As the Court previously discussed, the same wrongful act ultimately gives rise to the Affinity Lawsuit and the Loop Spine TCPA Lawsuit—namely, McLaughlin's alleged violation of the TCPA. The Policy states that interrelated claims "shall be considered as one Claim which shall be deemed made on . . . the date on which the earliest Claim was first made." *Id.* This statement matters because the Policy is a claims-made policy, meaning that coverage only exists for claims made during the policy term. *See* Doc. 1-2 at 4 ("This is a claims made policy coverage form and unless otherwise provided herein, the coverage of this form is limited to liability for claims first made during the policy period, or the extension period, if applicable."); *Aetna Cas. & Sur. Co. of Ill. v.*

*Allsteel, Inc.*, 304 Ill. App. 3d 34, 40 (1999) (noting that the purpose of a claims-made policy is to allow the insurance company to easily identify risks, allowing it to know in advance the extent of its claims exposure and compute its premiums with greater certainty).[4]

McLaughlin asserts that this provision means that USLI received notice of the Affinity Lawsuit in 2022, when Loop Spine filed its lawsuit, because the Affinity Lawsuit and Loop Spine TCPA Lawsuit are technically one claim under the Policy—rendering the "as soon as practicable" language irrelevant. Essentially, McLaughlin argues that he did not need to provide separate notice of each subsequent claim that arises from the same interrelated wrongful acts alleged in the TCPA Lawsuit.

While the interrelated claims provision does not explicitly excuse McLaughlin from providing written notice to USLI of the second interrelated claim, the Court determines that no reasonable trier of fact would determine differently when reading the contract as a whole. The interrelated claims language appears under the "notice and claim reporting provisions" heading. Doc. 1-2 at 37. And although the Policy states that an insured needs to provide USLI with written notice of a claim as soon as practicable, it also states that multiple claims involving the same wrongful act constitute one claim. It therefore follows that McLaughlin had to provide USLI with timely notice of only the original claim to satisfy the notice requirement for the later-learned interrelated claim. *Cf. Twin City Fire Ins. Co. v. Permatron Corp.*, No. 15 C 10252, 2018 WL 1565599, at *5 (N.D. Ill. Mar. 30, 2018) (finding the insured's initial and amended claims interrelated wrongful acts and concluding that because the insured failed to provide the insurance company with timely notice of the initial claim, the insurance company has no duty to defend the insured in relation to the amended claim); *Aetna*, 304 Ill. App. 3d at 42 (determining

[4] This provision explains why USLI does not argue that McLaughlin's claim is untimely because he made it outside of the relevant Policy period.

that an original complaint did not satisfy an insurer's notice requirement for later-filed lawsuits because the lawsuits were unrelated lawsuits filed almost three years after an original complaint). If a trier of fact determines that McLaughlin did not release the Affinity Lawsuit claim, then the Court determines that no reasonable trier of fact could dispute that McLaughlin satisfied the Policy's notice requirement.

## III. Section 155

Finally, McLaughlin contends that no genuine issue of material fact exists regarding his Section 155 claim against USLI. McLaughlin states that USLI's ongoing refusal to defend him in the Affinity Lawsuit and forcing him to retain legal counsel to obtain USLI's defense constitutes bad faith and improper insurance claims practices. USLI argues that a bona fide dispute precludes judgment for McLaughlin.

Section 155 provides "an extracontractual remedy to policy-holders whose insurer's refusal to recognize liability and pay a claim under a policy is vexatious and unreasonable." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1023 (7th Cir. 2013) (quoting *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 519 (1996)). In relevant part, Section 155 states:

> In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [additional penalties].

215 Ill. Comp. Stat 5/155(1). An insurer's conduct is vexatious and unreasonable "when 'the evidence shows that the insurer's behavior was willful and without reasonable cause.'" *P&M/Mercury Mech. Corp. v. W. Bend Mut. Ins. Co.*, 483 F. Supp. 2d 601, 603 (N.D. Ill. 2006) (quoting *Citizens First Nat'l Bank of Princeton v. Cincinnati Ins. Co.*, 200 F.3d 1102, 1110 (7th

Cir. 2000)). But an insurer "does not act vexatiously and unreasonably when (1) there is a bona fide dispute concerning the scope and application of insurance coverage; (2) the insurer asserts a legitimate policy defense; (3) the claim presents a genuine legal or factual issue regarding coverage; or (4) the insurer takes a reasonable legal position on an unsettled issue of law." *Id.* A bona fide dispute precludes recovery under Section 155 as a matter of law. *Nine Grp. II, LLC v. Liberty Int'l Underwriters, Inc.*, 2020 IL App (1st) 190320, ¶ 61.

Here, even if a trier of fact determines that the parties' Settlement Agreement did not release McLaughlin's indemnification and defense request for the Affinity Lawsuit, "[a]n insurer is not liable for a violation of [S]ection 155 when it takes a reasonable but erroneous position on its coverage obligations where its position is at least arguable." *Evergreen Real Est. Servs., LLC v. Hanover Ins. Co.*, 2019 IL App (1st) 181867, ¶ 38. Given the inconsistent language of the Settlement Agreement, the Court finds USLI's interpretation of the Settlement Agreement, and its resulting denial of coverage, reasonable. *Dominick's Finer Foods v. Ind. Ins. Co.*, 2018 IL App (1st) 161864, ¶ 95 ("Though we have disagreed with [the insurer's] interpretation of the policy language at issue, we do not believe that its position was so unreasonable as to warrant damages under section 155. There is a difference between disagreeing with a party's position and finding that position so untenable as to be unreasonable and evidence of bad faith."). The Court therefore concludes as a matter of law that USLI did not act vexatiously or unreasonably in denying coverage to McLaughlin for the Affinity Lawsuit under the Policy.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part USLI's motion for summary judgment [26] and grants in part and denies in part McLaughlin's motion for summary judgment [25]. The Court grants judgment for USLI on McLaughlin's Section 155 claim. The

parties may proceed before a trier of fact to determine the scope of their settlement agreement's release provision.

Dated: October 6, 2026

SARA L. ELLIS
United States District Judge